1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT FOR THE**
9                    **EASTERN DISTRICT OF CALIFORNIA**
10
11   CHRIS HILL,                          )      1:06-cv-00939-AWI-DLB
                                          )
12              Plaintiff,                )      ORDER RE: MOTION FOR
                                          )      SUMMARY JUDGMENT
13        v.                              )
                                          )      (Doc. 60)
14   NOVARTIS PHARMACEUTICALS             )
     CORPORATION; and DOES                )
15   1 through 20, inclusive,             )
                                          )
16              Defendants.               )
                                          )
17   _____ )
18
                         **I. INTRODUCTION**
19
20
21   Defendant Novartis Pharmaceuticals Corporation has filed a motion for summary judgment.  For
     reasons discussed below, the motion shall be denied.
22
23
                  **II. FACTS AND PROCEDURAL BACKGROUND**
24
25
26   The Court refers the parties to previous orders for a complete chronology of the proceedings.  On
     June 29, 2006, plaintiff Chris Hill (hereinafter referred to as "Plaintiff" or "Hill") filed her complaint
27
     in San Joaquin County Superior Court against defendants Novartis Pharmaceuticals Corporation
28

(hereinafter referred to as "Defendant" or "Novartis") and Does 1 through 20, inclusive, asserting causes of action for strict products liability and negligence.   Plaintiff alleged she suffered osteonecrosis of the jaw after taking Zometa, an FDA-approved drug developed and manufactured by Defendant for the treatment of cancer.   On July 18, 2006, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1332(a) and 1441(a).   On August 21, 2012, Defendant filed its motion for summary judgment, contending there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.   Plaintiff filed her opposition to Defendant's motion on September 24, 2012.   Defendant filed its reply to Plaintiff's opposition on October 11, 2012.

**III. LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A).  "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (2010) (citing *Celotex, supra,* at p. 325).  If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538.  A court ruling on a motion for summary judgment must construe all facts and inferences in the light

2

1   most favorable to the non-moving party.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255,

2   106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   Even if the motion is unopposed, the movant is not

3   absolved of the burden to show there are no genuine issues of material fact, *Henry v. Gill Industries,*

4   *Inc.,* 983 F.2d 943, 949-50 (9th Cir. 1993), although the court may assume the movant's assertions

5   of fact to be undisputed for the purposes of the motion and grant summary judgment if the facts and

6   other supporting materials show the movant is entitled to it.  *See* Fed. R. Civ. P. 56(e)(2), (3).

7

8                                    **IV. DISCUSSION**

9

10  ***A. Defendant's first argument: Plaintiff has failed to produce any admissible expert testimony on***

11  ***specific causation*** – Defendant contends as a threshold matter that summary judgment must be

12  granted because Plaintiff cannot meet her burden to show specific causation between her use of

13  Zometa and her osteonecrosis of the jaw.   In particular, Defendant contends Plaintiff cannot show

14  such causation because she lacks admissible expert testimony on the issue.   Having reviewed the

15  pleadings of record and all competent and admissible evidence submitted, the Court disagrees.

16          "We apply state law to a products liability claim brought in federal district court pursuant,"

17  as here, "to diversity jurisdiction."  *Stilwell v. Smith & Nephew, Inc.,* 482 F.3d 1187, 1193 (9th Cir.

18  2007).  "California has definitively adopted the substantial factor test of the Restatement Second of

19  Torts for cause-in-fact determination," and "[u]nder that standard, a cause in fact is something that

20  is a substantial factor in bringing about the injury."  *Rutherford v. Owens-Illinois, Inc.,* 16 Cal.4th

21  953, 968-69, 67 Cal.Rptr.2d 16, 941 P.2d 1203 (1997).   In the context of products liability actions

22  for which causation can only be shown by scientific or medical evidence, this standard of proof

23  requires the plaintiff to establish to a reasonable degree of medical probability based upon competent

24  expert testimony that the defective product supplied by the defendant was a substantial factor in

25  causing or contributing to the plaintiff's injury.  *Bockrath v. Aldrich Chemical Co., Inc.,* 21 Cal.4th

26  71, 79, 86 Cal.Rptr.2d 846, 980 P.2d 398 (1999) (citing *Rutherford, supra,* 16 Cal.4th at 976 fn. 11).

27

28                                          3

1

2      In his expert report, Plaintiff's causation expert Dr. Richard Kraut states it is his opinion

3   bisphosphonate drugs like Zometa have shown a propensity to cause jaw necrosis in cancer patients,

4   and that this phenomenon has appeared in his medical practice and has been more difficult and more

5   severe in patients who have been treated with intravenous bisphosphonates.  Kraut further states he

6   believes with reasonable medical and dental certainty, based on a review of Plaintiff's medical

7   records, that Plaintiff suffered bisphosphonate-induced jaw necrosis resulting from her use of

8   Zometa.  In a previous order, the Court denied Defendant's motion to exclude Kraut's testimony,

9   finding Kraut was qualified to opine on causation and that his testimony rested on a reliable

10   methodology and was relevant to the issues before the Court.  Kraut's testimony would be sufficient

11   for a reasonable trier of fact to conclude use of Zometa was a substantial factor in causing Plaintiff's

12   injury.  Accordingly, Defendant's contention Plaintiff has no admissible expert testimony on the

13   issue of causation is without merit and not a ground for summary judgment in favor of Defendant.

14

15   ***B. Defendant's second argument: Plaintiff's proffered expert testimony is insufficient to satisfy***

16   ***her burden of proof under California law*** – Defendant further contends that even if Plaintiff's

17   expert causation testimony is admissible, it is insufficient to satisfy her burden of proof.   In

18   particular, Defendant contends Plaintiff cannot prove what caused her alleged osteonecrosis of the

19   jaw unless adequate investigation eliminates all other reasonable causal explanations for the

20   osteonecrosis, and because there are reasonable causal explanations for the osteonecrosis other than

21   the use of Zometa, including metastatic renal cell cancer, chemotherapy, surgical trauma, periodontal

22   disease and alcohol and tobacco use, Plaintiff is required to offer competent evidence showing all

23   of these risk factors have been ruled out as possible causes in order to show use of Zometa was the

24   probable cause of her osteonecrosis.  Having reviewed the pleadings of record and all competent and

25   admissible evidence submitted, the Court does not agree.  Defendant has provided no authority – and

26   the Court's research reveals no authority – stating a products liability plaintiff must eliminate all

27

28                                                              4

other reasonable causal explanations for his or her injury in order to show that the alleged cause is a probable one. That is not the law of this state. "The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case." *Jones v. Ortho Pharmaceutical Corp.,* 163 Cal.App.3d 396, 402, 209 Cal.Rptr. 456 (1985). A cause that is merely possible may be deemed to be probable *if* the plaintiff shows there are no other reasonable causal explanations for his or her injury, *see id.* at 403, but a plaintiff need not show there are no other reasonable causal explanations in order to establish such probability. A plaintiff may do so simply by offering "an expert opinion that contains a reasoned explanation illuminating why the facts have convinced the expert, and therefore should convince the jury, that it is more probable than not the [alleged misconduct] was a cause-in-fact of the plaintiff's injury." *Jennings v. Palomar Pomerado Health Systems, Inc.,* 114 Cal.App.4th 1108, 1118, 8 Cal.Rptr.3d 363 (2003) (emphasis omitted); *see Osborn v. Irwin Memorial Blood Bank,* 5 Cal.App.4th 234, 7 Cal.Rptr.2d 101 (1992) (" '[A plaintiff] is not required to eliminate entirely all possibility that the defendant's conduct was not a cause. It is enough that he introduces evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not' ").

That was done here. Kraut opines with reasonable medical and dental certainty based on a review of Plaintiff's medical records: "[Plaintiff] was diagnosed with right kidney cancer with metastasis to the lungs in March of 2002. She underwent a right radical nefrectomy, a metastatic work-up, which showed pulmonary metastasis and a possible solitary skeletal metastasis. She underwent investigational chemotherapy with Epothilone at the Fred Hutchinson Cancer Center in Seattle for ten months. After treatment, she was noted to be 'in complete remission.' During the course of her care, she also received Zometa 4 mg a month from June 21st, 2002 through September 2004. [¶] . . . [¶] . . . I have performed a differential diagnosis. The primary considerations in the differential diagnosis for this patient are osteomyelitis and osteoradionecrosis. The patient did not have therapeutic radiation to her mandible. In terms of chemotherapy, corticosteroids and other risk

1   factors, I do not believe that these played a role in [Plaintiff's] jaw necrosis.  I feel that this patient

2   did suffer from bisphosphonate induced jaw necrosis from her right mandible, which ultimately

3   required resection and a second procedure to replace the initial bone plate." Kraut's opinion, which

4   was further clarified at his various depositions, would be sufficient for a reasonable trier of fact to

5   conclude Plaintiff's use of Zometa more likely than not caused her to develop osteonecrosis.

6   Accordingly, Defendant's contention Plaintiff's expert causation testimony is insufficient to satisfy

7   her burden of proof is not a ground for summary judgment in favor of Defendant.

8

9   ***C. Defendant's third argument: Plaintiff cannot establish her failure to warn claims*** – Under the

10  rubric of failure to warn, Defendant furthers contends the evidence fails to show it breached its duty

11  to warn Plaintiff that the use of Zometa came with an increased risk of developing osteonecrosis of

12  the jaw.  Defendant points to the fact that Plaintiff's expert Dr. Robert Marx's pioneering Journal

13  of Oral and Maxillofacial Surgery article describing what he determined was bisphosphonate-

14  induced osteonecrosis of the jaw in 36 of his patients was not published until September 2003 (more

15  than a year afer Plaintiff was first prescribed Zometa in June 2002), and further points to the lack of

16  expert testimony opining Defendant should have warned of such risk prior to September 2003.

17  Defendant also points to the fact it changed its labeling to reflect such risk in September 2003, once

18  Marx's and other published reports began emerging.  From this, Defendant contends it did not breach

19  its duty to warn Plaintiff, but that the duty to warn was in fact satisfied.  Having reviewed the

20  pleadings of record and all competent and admissible evidence submitted, the Court does not agree.

21      "The theory underlying a warning defect cause of action is that the product is dangerous

22  because it lacks adequate warnings or instructions. [Citation.] 'Generally speaking, manufacturers

23  have a duty to warn consumers about the hazards inherent in their products. [Citation.] The

24  requirement's purpose is to inform consumers about a product's hazards or faults of which they are

25  unaware, so that they can refrain from using the product altogether or evade the danger by careful

26  use. [Citation.]   Typically, under California law, [courts] hold manufacturers strictly liable for

27

28                                          6

injuries caused by their failure to warn of dangers that were known to the scientific community at the time they manufactured and distributed their product.' [Citations.] To establish strict liability for failure to warn, the plaintiff must prove the defendant 'did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution . . . . [T]he reasonableness of the defendant's failure to warn is immaterial.' [Citations.]" *Chavez v. Glock, Inc.,* 207 Cal.App.4th 1283, 1304, 144 Cal.Rptr.3d 326 (2012).   The evidence suggests Defendant possessed information about a causal connection between bisphosphonates and osteonecrosis of the jaw earlier than September 2003, and possibly as early as the 1990s.  In the Court's view, whether such information reflected the "generally recognized and prevailing best scientific and medical knowledge available at the time" such that the risk of osteonecrosis of the jaw should have been known or knowable to Defendant is a question for a reasonable trier of fact.  Defendant's contention also presupposes, without any basis in the evidence, that its September 2003 labeling change was in fact adequate.  In the Court's view, adequacy, too, is a question for a reasonable trier of fact.  Dr. Suzanne Parisian's testimony would be sufficient for a trier of fact to conclude it was not adequate.

Defendant further contends that under the learned intermediary doctrine, Defendant's duty to warn of risks associated with the use of Zometa was owed not to Plaintiff but to Dr. Thompson, the physician who first prescribed Zometa to Plaintiff in June 2002.  "In the case of prescription drugs and implants, the physician stands in the shoes of the 'ordinary user' because it is through the physician that a patient learns of the properties and proper use of the drug or implant.  Thus, the duty to warn in these cases runs to the physician, not the patient." *Valentine v. Baxter Healthcare Corp.,* 68 Cal.app.4th 1467, 1483, 81 Cal.Rptr.2d 252 (1999) (citing *Carlin v. Superior Court,* 13 Cal.4th 1104, 1116, 1118, 56 Cal.Rptr.2d 162, 920 P.2d 1347 (1996)); *see Carmichael v. Reitz,* 17 Cal.App.3d 958, 989, 95 Cal.Rptr. 381 (1971) ("It is the general rule that the duty of adequate warning by the manufacturer of an ethical drug is discharged by its warning of hazards to doctors who may in the exercise of their medical judgments decide to use the drug as a part of their

chemotherapy").  Pursuant to this doctrine, Defendant contends once again that because there had been no published reports linking bisphosphonate use to osteonecrosis of the jaw at the time Thompson prescribed Zometa to Plaintiff, and because it changed the labeling for Zometa as soon as published reports began emerging in 2003, it fulfilled its duty to warn.  Problematically for Defendant, the Court has already found genuine issues of material fact as to whether the risk of osteonecrosis of the jaw was known or knowable to Defendant before Plaintiff was prescribed Zometa and whether Defendant's subsequent labeling changes were adequate.  Thus, there is a triable issue of material fact whether Defendant breached its duty to warn even if, under the learned intermediary doctrine, Defendant may not have had a duty to ensure the warning reached Plaintiff.

Citing *Motus v. Pfizer Inc., (Roerig Division),* 358 F.3d 659 (9th Cir. 2004), which held that a products liability claim premised on a failure to warn "cannot survive summary judgment if stronger warnings would not have altered the conduct of the prescribing physician," *id*. at 661, Defendant further contends summary judgment must be granted because there is no evidence to suggest different warnings would have prevented Plaintiff's physicians from prescribing Zometa to Plaintiff, thereby preventing her from developing osteonecrosis of the jaw.  In particular, Defendant points to the deposition testimony of Thompson, the physician who first prescribed Zometa to Plaintiff, wherein Thompson acknowledged (1) it was his habit and custom throughout his medical practice to prescribe pharmaceuticals to patients when he believed the benefits outweighed the risks, (2) he believed in May 2002 that the benefits of Zometa outweighed the risks for patients, like Plaintiff, whose cancer had metastasized to the bone and (3) he believed prescribing Zometa was part of the applicable standard of care for treating such patients.  Problematically for Defendant, Thompson further testified he had no information even as late as May 2003 that osteonecrosis of the jaw had been observed in patients receiving Zometa.  This suggests osteonecrosis of the jaw was not a risk Thompson had considered when he prescribed Zometa to Plaintiff.  Defendant points to Thompson's testimony that he still prescribes Zometa to cancer patients and believes today that the benefits of Zometa outweigh its risks.  But that is *today.*  There is simply no indication Thompson

would have held such a belief if he had known osteonecrosis was a risk *at the time of Plaintiff's treatment*.  Moreover, Thompson revised his patient intake form after becoming aware of the osteonecrosis risk.  Previously, the form did not inform patients of the osteonecrosis risk.  The form is now designed to inform patients of such risk, and further instructs patients to inform their health care provider of upcoming dental exams and to inform their dentists they are receiving zoledronic acid.  Thompson testified he would have discussed all of the items on the form with Plaintiff, and Plaintiff testified if she had known there was a risk that Zometa use could result in problems with her jaw, she would not have consented to such use.  This suggests, contrary to Defendant's contention, more adequate warnings *would* have changed Plaintiff's course of medical treatment.[1]

Lastly, Defendant contends summary adjudication of Plaintiff's strict products liability cause of action must be granted in favor of Defendant because no evidence suggests there was a defect in the design or manufacturing of Zometa that rendered Zometa unsafe.  This argument is irrelevant, as Plaintiff's strict liability claim is not premised on a design defect but rather Defendant's  failure to warn of the osteonecrosis risk.  *See Chavez, supra,* 207 Cal.App.4th at 1302 ("Strict product liability may be premised upon a theory of design defect, manufacturing defect or failure to warn").

---

[1] Defendant also refers to the deposition testimony of Plaintiff's subsequent treating oncologist, Dr. Aminder S. Mehdi, who, like Thompson, testified he believed in 2003 that the benefits of prescribing Zometa to Plaintiff outweighed the risks, that prescribing bisphosphonate medication to patients with bone metastasis was part of the applicable standard of care and that he still believes today that the benefits outweigh the risks.  But the evidence suggests Mehdi, as with Thompson, did not consider osteonecrosis of the jaw to be a risk at the time he continued Plaintiff's treatments.  Mehdi also testified that knowing what he knows now, if he even suspects that one of his patients receiving bisphosphonate treatment has osteonecrosis, he stops the treatment.

# V. DISPOSITION

Based on the foregoing, the motion of defendant Novartis Pharmaceuticals Corporation for summary judgment is DENIED.

IT IS SO ORDERED.

Dated:     November 29, 2012     

_____

UNITED STATES DISTRICT JUDGE